(118 So. 746)

**STATE ex rel. SMITH v. GULLATT et al., City Com'rs. (4 Div. 402.)**

Supreme Court of Alabama. Nov. 22, 1928.

372

Rushton, Crenshaw & Rushton, of Montgomery, B. deG. Waddell, of Seale, and J. W. Kelley, of Phenix City, for appellant.

Frank M. De Graffenried, of Seale, C. B. Gullott, Jr., and Bird & Hicks, all of Phenix City, and Denson & Denson, of Opelika, for appellees.

SAYRE, J. The question presented for decision requires a statement of the legislative history of section 2336 of the Code of 1923, and the amendatory Act of August 26, 1927 (Acts 1927, p. 465).

In 1911 the Legislature made provision for the adoption of the commission form of government "in all cities in the State of Alabama" as follows (Acts 1911, p. 591 et seq.):

"Section 1. All cities in the state of Alabama which have a population of more than one thousand and not more than twenty-five thousand people according to the last federal census, or which hereafter shall have such population, according to any federal or municipal census that may be taken hereafter, shall be known as class 'D' cities and may become organized under the commission form of government according to the terms of this act."

So much of section 2 as it is needful to reproduce reads thus:

"Sec. 2. In cities of class 'D' upon the presentation of a petition signed by a number of qualified electors of such city as will equal three voters for every one hundred inhabitants or fraction thereof, according to the federal census of 1910 or any federal or municipal census hereafter taken, residing in such cities, to the judge of probate of the county in which such city is located, asking that the proposition of organizing under this act be submitted to the qualified voters of such city, the judge of probate shall examine such petition and determine whether or not the same is signed by the requisite number of qualified electors of such city to authorize such election in such city for the purpose of adopting the provisions of this act, and if such probate judge shall find that said petition contains a requisite number of electors to authorize such an election he shall within ten days from the receipt of said petition certify such fact to the mayor of the city

in which such election is so petitioned, and the certificate of the judge of probate as to the sufficiency of said petition shall be final."

Other sections of the act regulate the procedure for putting the act into effect and the powers and duties of commissioners when elected.

In the Code of 1923 these sections were reproduced in these terms:

"2335. *Cities and Towns to Which Article Applies.*—All cities in the state of Alabama which have a population of more than one thousand, and not more than twenty-five thousand people, according to the last federal census, or which hereafter shall have such population, according to any federal or municipal census that may be taken hereafter, shall be known as class 'D' cities, and may become organized under the commission form of government, by proceeding as is hereafter in this article provided."

"2336. *Petition for Election.*—In cities of class 'D' upon the presentation of a petition signed by a number of qualified electors of such city as will equal three voters for every one hundred inhabitants or fraction thereof, according to any federal or municipal census hereafter taken, residing in such cities, to the judge of probate of the county in which such city is located, asking that the proposition of organizing under this article be submitted to the qualified voters of such city, the judge of probate shall examine such petition and determine whether or not the same is signed by the requisite number of qualified electors of such city to authorize such election in such city for the purpose of adopting the provisions of this article, and if such probate judge shall find that said petition contains a requisite number of electors to authorize such an election, he shall, within ten days from the receipt of said petition, certify such fact to the mayor of the city in which such election is so petitioned, and the certificate of the judge of probate as to the sufficiency of said petition shall be final."

It is noted and to be noticed that, according to the last-quoted section, the petition for an election must be addressed "to the judge of probate of the county in which such city is located," therein following the original act literally. It was evidently considered that the statute in the form shown above failed to reach the case of cities located in two or more counties. Accordingly the Legislature, by the Act approved August 26, 1927, amended section 2336 so as to authorize the presentation of the petition "to the judge of probate of the county in which such city is located or in which a part of such city is located," and by adding:

"Where such city is situated in two or more counties the judge of probate to which such petition is presented shall require the judge of probate of such other county or counties in which said city is situated to certify to him a list of the qualified electors residing in such city and in each respective county, and upon receipt of such written request it shall be the duty of such judge of probate within seven days thereafter to certify such list of electors to the judge of probate from which such request was received." Acts 1927, p. 465.

The last quoted Act made no change in the "class" of cities to which its provisions were applicable. It sought only to adapt the procedure to the case of cities located in two or more counties. It reproduced the words, "according to any federal or municipal census hereafter taken." In April, 1928, qualified electors of the city of Phenix City, situated partly in Lee and partly in Russell counties, presented their petition to the judge of probate of Lee county, praying that an election be held to determine whether the commission form of government should be adopted. An election was held with result that the commission form was adopted. Appellees were elected as commissioners and went into office. This proceeding quo warranto seeks to oust them from office on the ground that the judge of probate had no jurisdiction to order the election and therefore that the declared result was based on a nullity and was itself null, void, and of no effect.

It will be observed that the result turns upon the meaning and effect of the statute, the act of 1927, wherein it, in literal agreement with section 2336 of the Code, for the words, "according to the federal census of 1910 or any federal or municipal census hereafter taken," substitutes the words, "according to any federal or municipal census hereafter taken." The argument for relator, appellant, is that no federal or municipal census has been taken since the act of 1927, or for that matter since the Code of 1923, and therefore that the judge of probate was without power or jurisdiction to order an election. More narrowly stated, the question at hand turns upon the meaning and effect to be assigned to the word "hereafter" in the act of 1927. It is clear enough that in the original act "hereafter" meant, for one thing, the census which was afterwards, in 1920, to be taken. If the census of 1920 can be allowed to serve the purpose of the amendatory act of 1927, then the probate judge was authorized to proceed as he did in acting upon the petition based upon that census. Such also would be the case if it were necessary to find authority in section 2336 of the Code from which, so far as concerns the case under consideration, the amendatory act is copied.

Appellant's construction of section 2336 of the Code of 1923 would lead to the unavoidable conclusion that the effect of the codification of the act of 1911 was to leave a period between that codification and the federal census to be taken in 1930, or a municipal census to be taken in the then future, such municipal census being dependent upon the will of the government to be superseded, in which the advantage of the statute could not be availed of. It would have been competent of course for the Legislature so to arrange; but we would expect to find so arbitrary, and we may say unreasonable an arrangment

to find clear expression in the codification by which the Legislature expressed its will. We are of opinion that the Code may reasonably be construed as intending that the population upon which the petition must be based in the future was, and is now in the absence of a municipal census, to be based upon the then last federal census, or upon a municipal census, if any, intervening between the last federal census and the time of the petition; that is, upon a municipal census "hereafter," meaning now "thereafter" taken. Such obviously was the intention of the original statute, and, in view of the anomalous result to flow from a different construction, the court now holds that such also is the proper construction of the section of the Code and the act of 1927. It is obvious that a change of language is some indication of a change of intention. But the reasonable construction of the statute in its codified form leads to the conclusion that the intention was to eliminate all reference to the census of 1910 which, at the time of codification, had been superseded by the census of 1920, and to regulate the matter of the petition for an election by the next preceding federal census or such municipal census as might thereafter be taken.

The construction of the Code thus adopted is based upon the rule that where, in codifying a law, ambiguity or substantial doubt is created, the court will look to the original act and give effect to its intent and purpose to what extent that may be reasonably done. Endlich Interpretation of Statutes, §§ 51 and 381, where a number of illustrations of the rule may be seen. Persuasively in point is Gaston v. Merriam, 33 Minn. 271, 22 N. W. 614; the decision being thus correctly stated in section 381 as follows:

"Where an act passed in 1866 amended and re-enacted another, passed in 1858, providing that every conveyance not recorded should be void as against attachment and judgment creditors, but omitted the words 'hereafter made,' which were in the act of 1858, it was held, nevertheless, not to apply to conveyances executed before the latter statute had been passed."

In Landford v. Dunklin, 71 Ala. 609, Brickell, C. J., stated the rule of construction in cases of this character in this strong language:

"No rule of statutory construction rests upon better reasoning than that, in the revision of statutes, alteration of phraseology, the omission or addition of words, will not necessarily change the operation or construction of former statutes. The language of the statute as revised, or the legislative intent to change the former statute, must be clear before it can be pronounced that there is a change of such statute in construction and operation"—citing authorities.

To the same effect in general may be cited Lewis' Sutherland, Statutory Construction

(2d Ed.) § 451, where it is said that "statutes should be construed with a view to the original intent and meaning of the makers, and such construction should be put upon them as best to answer that intention which may be collected from the cause or necessity of making the act, or from foreign circumstances"; and Fuller v. American Supply Co., 185 Ala. 520, 64 So. 549; Southern R. Co. v. Smith, 163 Ala. 174, 50 So. 390; Lindsay v. U. S. Savings, 127 Ala. 366, 28 So. 717, 51 L. R. A. 393; Jackson County v. Derrick, 117 Ala. 361, 23 So. 193.

Further considering the matters discussed in the briefs, the court is of opinion that the allegations of appellees' answer show facts which bring Phenix City within the class upon which the amendatory statute operates, class D, nor is there any denial of the facts so stated. The question for decision is raised by demurrer to the answer and goes to the point that no federal or municipal census has been taken since 1923, and hence that the act of 1927 can have no application. As to that we have stated our judgment.

The judgment in favor of the commissioners is affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.